# Richmond.

## BONSACK MACHINE CO. V. WOODRUM.

### December 10th, 1891.

PAROL EVIDENCE—*Release of covenant.*—In the absence of fraud or mistake parol evidence cannot be admitted to show that an endorsement made on a sealed agreement in these words: " All matters and things embraced in the within contract have been fully adjusted and settled, and this contract is, for value received, declared ended and settled," and signed by the parties, was intended to refer only to money accounts between those parties, and not to include a covenant therein contained on the part of the party paying the consideration for the release, not to engage in a certain business for a certain period.

Appeal from decree of circuit court of city of Roanoke, rendered, in vacation, April 10th, 1890, in a suit wherein the appellant, the Bonsack Machine Company, was complainant, and R. H. Woodrum was defendant. Opinion states the case.

*A. H. Burroughs* and *G. W. & L. C. Hansbrough,* for appellant.

*W. R. Staples, Phlegar & Johnson* and *Penn & Cocke,* for appellee.

FAUNTLEROY, J., delivered the opinion of the court.

The bill is for specific performance of the covenant contained in the clause of an agreement under seal, entered on the 10th day of July, 1888, between the Bonsack Machine Company,

of Salem, Virginia, of the first part, and R. H. Woodrum, of
Roanoke, Virginia, of the second part, as follows : " And it is
expressly agreed by the said Woodrum, that he shall, in no
event, either directly or indirectly, have anything to do with
any other cigarette machine than those of the said company,
unless by the full consent in writing of the said company, and
under such contract and arrangements as the said company
may provide; and this last provision shall continue for *twenty*
years from this date. The object of latter clause, as to other
machines, being to prevent the said Woodrum, after estab-
·lishing to any extent a business for the said company in South
America, from forming any combination, directly or indirectly
or in any manner whatsoever, by purchase or otherwise, with
the owner or controller of any other cigarette-machine. The
said Woodrum being the agent of the said company, and the
latter not being in a position to protect itself against any
arrangement which he might make to the injury of the said
company, and on this account it is distinctly agreed that said
Woodrum shall not abandon this agency, or cause the said
company to revoke it; and after connection with this company
has ceased from any cause whatever, in any manner whatever,
directly or indirectly, become interested in any other cigarette-
machine in South America, or .in any country to which a
machine of the said party of the first part had been sent, for
twenty years from the date hereof."

And the further object of the bill is to enjoin the said R.
H. Woodrum from acting with or for another company ; and
to recover damages for his having been connected or interested
in and with and for another company, to-wit, the Ludington
Cigarette-Machine Company, thereby supplanting and break-
ing down the interest and business of his principal, the Bon-
sack Machine Company. As a defence to this suit, Woodrum
pleaded that, after the contract sued on and exhibited with the
bill, dated July 10th, 1888, was made and delivered, to-wit, on
the 6th day of August, 1889, the plaintiff, the Bonsack Cigar-

ette-Machine Company, for a valuable consideration, to-wit, $20,000, paid to it by the defendant, Woodrum, by a writing dated August 6th, 1889, signed by it, by D. B. Strouse, its president, and by the said Woodrum, which was endorsed on the said contract of July 10th, 1888, contracted and agreed that all matters and things embraced by said contract of July 10th, 1888, were fully adjusted and settled, and the said contract itself was ended and settled, and did thereby agree to release and absolve the defendant from all the liability, obligations and restrictions imposed by the said contract; and the said Woodrum did thereby release the said plaintiff from all liability, obligations and restrictions imposed by the said contract. And that afterwards, to-wit, on the 7th day of September, 1889, the plaintiff, the Bonsack Cigarette-Machine Company, did, by its board of directors, who were thereunto duly authorized by a resolution duly adopted and authenticated by the corporate seal of the said plaintiff and the signature of and certificate of P. A. Krise, its secretary, confirm and ratify the settlement and contract made between the plaintiff by D. B. Strouse, president, and the said Woodrum on the 6th day of August, 1889, as aforesaid.

A motion was made by the complainant to strike out and reject this plea, which motion was overruled. A special replication was then tendered, which alleges that the matter set up in the bill was not intended to be embraced by the contract of August 6th, 1889. This special replication was rejected, but an agreement was made that the cause might be heard and determined upon a general replication as it would be on a good special replication; and the cause was so heard, and the bill dismissed.

We are of opinion that the written agreement of August 6th, 1889, did embrace and abrogate the provision in the contract of July 10th, 1888, which prohibited Woodrum from becoming interested in or connected with the cigarette-machines of other companies. There is no pretence, nor can there be, that

there is any patent ambiguity; and the words are too plain, positive, and pointed to admit the possibility of any occult or latent meaning. "*All* makes and *things* embraced by the within contract have been *fully* adjusted and settled, and *this contract* is, for value received, declared *ended* and settled." It is contended by the appellant that the "settlement," "receipt," and "*release*" expressed and embodied in the explicit and all-embracing terms of the contract of August 6th, 1889, embraced and referred to the settlement, adjustment, and satisfaction of only the *money-accounts* in controversy between the parties to the contract of July 10th, 1888, and do not affect or embrace the covenant contained in the said contract, which restrained Woodrum, for twenty years from its date, from any connection with or interest in the cigarette-machines of any other competing company.

But, if it be possible to hold that the terms "*all matters and things* embraced by the *within contract* have been fully adjusted and settled," relate only to *money-accounts* between Woodrum, agent, and the Bonsack Cigarette-Machine Company, principal; yet there are the express words added, "and *this contract* is, for value received, declared *ended* and settled." The *contract* itself is abrogated—"*ended*." What does *ended* mean? It means final, definite, complete, conclusive. It imports what will be, when the Apocalyptic Angel, with one foot on the Sea and the other upon the Earth, shall lift his hand to Heaven, and swear, by *Him* that liveth forever and ever, that there shall be "*Time no longer*"!

It will not *then* be admissible to offer *parol testimony* to alter, vary, and contradict the explicit terms of the awful *declaration*; and to prove that, *non obstante*, the unambiguous words themselves, "*Time* (still) rolls his ceaseless course," for *some* of the *provisions* of Man's tenure upon Earth!

There is no intimation of fraud, or of mutual mistake; and, though in a court of law a covenant cannot be released by parol agreement *alone*, yet *this* is an executed written agreement, for

valuable consideration accepted and retained by the complainant, who, offering to return none of it, asks a court of equity to say it is not bound, because it did not put its seal to the writing endorsed upon the contract under seal, and which was adopted, ratified, and approved by its own resolution, August 24th, 1889, certified under its seal, and delivered to the defendant, who, then and thereupon, paid to the said company the additional sum of $500; which, with the $20,000 already paid by him to the said company, was the consideration moving from him for his *release* from the contract itself of July 10th, 1888.

See the following authorities: 7 Waite's Act. & Def. 454, 455; Pomeroy's Eq. Jurisp., secs. 70–379–383; *Towner* v. *Lucas*, 13 Gratt.; *Calhoun* v. *Wilson*, 27 Gratt.; *Barnett* v. *Barnett*, 83 Va.; Starkie on Evid, Vol. II, p. 547; *Woodward, Baldwin & Co.* v. *Foster*, 18 Gratt., and cases there referred to; *Knick* v. *Knick*, 75 Va.; *French* v. *Williams*, 82 Va.; *Yates* v. *Central Lunatic Asylum*, 84 Va.; *Redd* v. *Commonwealth*, 85 Va.; 2 Phillips on Evid. 559–531–958–961–754; and 3 Phillips on Evid., 292 and note; 18 Gratt. 207; 2 Leigh, 630.

We find no error in the record, and our judgment is to affirm the decree appealed from.

JUDGMENT AFFIRMED.